IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN RADILLO, | |
| Plaintiff, | CV F 04 5353 AWI  WMW   PC |
| vs. | FINDINGS AND RECOMMENDATION RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC 48) |
| M. D. LUNES, et al., | |
| Defendants. | |

    Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on February 27, 2004. The court screened plaintiff's complaint pursuant to 28 U.S.C. § 1915A and found that it stated a cognizable claim for relief under 42 U.S.C. § 1983 against Defendants Lunes and Chamalbide for retaliating against him for fling inmate grievances, in violation of the First Amendment. Plaintiff also claims that Defendants were deliberately indifferent to his safety in violation of the Eighth Amendment.

    Pending before the Court is a motion for summary judgment by Defendants Lunes and Chamalbide. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the ground that there does not exist a triable issue of fact, and Defendants are

entitled to judgment as a matter of law.

## ALLEGATIONS IN THE COMPLAINT

In his complaint, Plaintiff alleges that Defendants falsely accused him of sexual behavior, placing him in danger. Plaintiff alleges that the Mexican Mafia (EME) prison gang, retaliates against inmates that engage in sexual conduct with other inmates. Plaintiff's specific allegations follow.

On December 23, 2002, Defendant Lunes approached Plaintiff's cell in order to escort Plaintiff's cellmate, Inmate Martinez, to a holding cell in order to receive his yearly package. Plaintiff "confronted" Lunes about an inmate request regarding mail tampering.[1] Lunes responded: "Oh yeah, I remember that. That sort of offended me there. You hurt my feelings."

When Inmate Martinez was returned to the cell, Martinez informed Plaintiff "that Defendant Lunes had told him, among other things, that there was 'a chrono going around,' stating that he and Plaintiff were engaged in an 'act.'" Lunes also told Martinez that "we don't care, its your homies you have to worry about if they find out."

On or about January 5, 2003, Defendant Chamalbide informed an Inmate Rodriguez, a validated member of EME, that he had recently caught a pair of inmates "at sex play" and asked Rodriguez "whether that was a bad thing."

On January 12, 2003, Defendant Chamalbide woke Plaintiff by banging on his cell door with a flashlight. She continued to do so until Plaintiff woke his cellmate. Chamalbide advised Martinez that she had to write him up for "an act which she had witnessed, but had thought nothing of at the time." Chamalbide specified that it was an act that occurred on October of 2002. When Martinez asked her why she did not report it earlier, Chamalbide responded that "to be honest, today is my last day working here, and I am being pressured to do this write up against

---

[1] In the May 2005 order directing service of the complaint, the Court found that Plaintiff had stated a claim for relief against Defendants for retaliation against him for filing inmate grievances. There are no claims regarding mail.

2

my will by IGI."[2]

Chamalbide "further stated that she had messed up by telling someone as a joke, who then turned around and told someone else, blowing it out of proportion." Defendant Chamalbide apologized to Martinez, "stating that she didn't mean for all this to happen, but that she had been forced into doing so, being that it was her last day to work in the building."

In his complaint, Plaintiff "vehemently denies that he ever engaged in any illegal sexual behavior with his cell mate I/M Martinez". Plaintiff further contends that the CDC 128A counseling chrono in question was viciously fabricated against him in retaliation for his filing of the CDC-GA-22 (Inmate Request) regarding Lunes' alleged involvement in mail tampering.

Plaintiff alleges that a "fact finding" conducted by Sergeant Beebe on March 5, 2003, "confirmed that Lunes was in fact involved as a production factor, in the development of the fabricated chrono in question, which was authored by Chamalbide." The fact finding revealed that Chamalbide knew that EME did not tolerate such behavior and "knew that such information would create a safety and security issue for the involved inmates, as well as the institution."

DEFENDANTS' UNDISPUTED FACTS[3]

1. At all times relevant to this case Plaintiff, Juan Radillo, P-94519, was confined at California State Prison - Corcoran. (Complaint at ¶ 4.)

2. Radillo and his cell partner inmate Martinez, J-52893, are associates of the prison gang Mexican Mafia. (Exhibit A, Declaration of M. Lunes, at ¶ 2.)

3. Defendant Lunes is employed by the Department of Corrections and Rehabilitation as a Correctional Officer, and he is assigned to the Investigative Unit, and is responsible for monitoring prison gang activity. (*Id.* at ¶ 1.)

---

[2] Institutional Gang Investigation Unit.

[3] Plaintiff does not provide a separate statement of undisputed facts. Plaintiff combines his argument in opposition with a disputation of certain of Defendants' undisputed facts. These will be addressed in turn.

4. Prison gangs are criminal organizations which engage in drug smuggling, extortion, gambling, murder, and physical assaults, both on other rival gangs and on their own members. (*Id.* at ¶ 2.)

5. Departmental policy requires that inmates who are validated as prison gang members or associates be confined to security housing units on an indeterminate basis. The activities of inmates associated with prison gangs are closely monitored. The prison gangs also control the activities of inmates associated with disruptive groups. Inmates associated with disruptive groups are not indeterminately confined to security housing units. Therefore, the inmates associated with the disruptive groups are the individuals who carry out the orders of the prison gangs. (*Id.* at ¶ 3.)

6. Family and friends of the prison gang inmates serve as the gang's messengers, carrying the gang's orders to other inmates. During the times alleged in the complaint, inmate Martinez was highly involved in Mexican Mafia gang activities. Inmate Martinez was responsible for controlling the activities of the Southern Hispanic inmates at the California Substance Abuse Treatment Facility. (*Id.* at ¶ 4.)

7. Inmate Radillo's wife was acting as a mail drop for Martinez and the Mexican Mafia. Therefore, the correspondence and visitation of Radillo and Martinez was closely monitored. This included reading all incoming and outgoing personal mail. (*Id.* at ¶ 5.)

8. Defendant Lunes is aware that both inmate Martinez and Radillo have filed administrative appeals complaining about the monitoring of their mail. (*Id.* at ¶ 6.)

9. Defendant Lunes is also aware that Radillo and Martinez have alleged that the monitoring of their mail is a violation of federal mail tampering statutes. All monitoring activities are conducted according to regulations and institutional procedures, therefore, Defendant Lunes does not believe that their appeals had any merit. (*Id.*)

10. Defendant Lunes recognizes that inmates have the right to file administrative appeals, and that their appeals are simply part of the normal activities of his job. (*Id.*)

11. Defendant Lunes has no knowledge of any other legal activities of either inmate Radillo or inmate Martinez. (*Id.*)

12. Some time in December 2002, Defendant Lunes was conducting his duties in the housing unit where Radillo and Martinez were housed. The second watch floor officer informed him that Officer Chamalbide had observed Radillo and Martinez engaged in sexual activity. The officer was unable to provide any specific details. (*Id.* at ¶ 7.)

13. Defendant Lunes relayed this information to his supervising Sergeant and Lieutenant. They both asked if there was any documentation and if not that the event should be documented. Defendant Lunes told the Sergeant that he would speak with Officer Chamalbide and ask her to document the event. (*Id.*)

14. That same evening, Defendant Lunes contacted the Watch Commander on first watch and asked to speak with Officer Chamalbide. After talking with her, Defendant Lunes asked her to document her observations. At that time, he explained that documentation was important because the Mexican Mafia does not tolerate homosexual activity. (*Id.* at ¶ 8.)

15. Several weeks passed and no document was written by Officer Chamalbide. Defendant Lunes then contacted her supervisor, Sergeant Bremner, and asked him whether the documentation had been written. (*Id.* at ¶ 9.)

16. Sergeant Bremner informed Defendant Lunes that he would speak to Officer Chamalbide and explain the importance of documenting sexual behavior between inmates. Officer Chamalbide then wrote the custodial counseling chrono documenting her observations.

17. Defendant Lunes had a conversation with inmate Martinez, in which he told Martinez that I had been informed that he and inmate Radillo had been caught in a sexual act. Martinez replied "we sex play with each other." I informed Martinez that if he or Radillo ever felt unsafe to contact him. (*Id.* at ¶ 10.)

18. Some time in August 2002, housing unit staff discovered a letter, written by inmate

Martinez, to inmate Radillo, in which Radillo is referred to as "stud muffin" and which contained explicit sexual references, including the following:

> I probably would have jacked you off just to show my gratitude! The only thing you taking is this dick up your ass biatch! Oh what a surprise. A wig, high heals & g. string hugh? You're a nut! I bet you would look good in that, with the addition of some red cool aid as lip stick. I want to do some mountain climbing for me like that okay? You know how you said you're a small branch of me? You're my dick biatch! That's what part you are of me! When is your B.day? Oct 4 que no? I will have a big candle for you to blow okay?

(*Id.* at ¶ 11.)

19. Neither Martinez nor Radillo have ever expressed any concern for their safety. They both continue to associate, including going to the exercise yard, with other Mexican Mafia gang members. Had they ever expressed any concern for their safety, Defendant Lunes would have taken immediate steps to protect them. (*Id.* at ¶ 12.)

20. Defendant Chamalbide is presently employed by the Department of Corrections and Rehabilitation as s a Correctional Officer at California State Prison - Corcoran (CSP Corcoran). In October 2002, she was assigned to the Security Housing Unit (SHU), Facility 4B3. (Exhibit B, Declaration of M. Chamalbide, at ¶¶ 1, 2.)

21. In the early morning hours of October 15, 2002, Defendant Chamalbide was conducting cell count. She observed inmate Martinez (J-52893) with his hands inside the partially removed boxer shorts of inmate Radillo. Inmate Martinez was grasping Radillo's erect penis. (*Id.* at ¶ 3.)

22. Defendant Chamalbide knocked on the window and ordered Martinez to stop, and he complied with the order. She then continued on with count. (*Id.*)

23. Pursuant to California Code of Regulations, title 15, § 3312, minor misconduct by an inmate can be corrected with verbal counseling. (*Id.* at ¶ 4.)

24. Because Martinez stopped his behavior when ordered to do so, Defendant Chamalbide did not believe there was a need to document the behavior. (*Id.*)

25. Defendant Chamalbide was not aware that their safety would be endangered by engaging in homosexual behavior. (*Id.*)

26. In December 2002, Third Watch staff were discussing inmates Martinez and Radillo. Defendant Chamalbide told them what she had seen in October 2002 while conducting cell count. (*Id.* at ¶ 5.)

27. A staff member, Defendant Chamalbide does not know who reported the incident to the Institutional Gang Investigation (IGI) Unit. Defendant Chamalbide received a call from Officer Lunes, who was assigned as the gang investigator for inmate Martinez. Officer Lunes asked that she document what I had seen because homosexual behavior could pose a danger to their safety. (*Id.* at ¶6.)

28. Because Martinez and Radillo complied with her orders and the incident had taken place over a month before, she did not believe that a written report was necessary. (*Id.*)

29. IGI staff contacted Sergeant Bremner, Defendant Chamalbide's supervisor, and asked that she document the information on a counseling chrono. Sergeant Bremner agreed with IGI staff that the behavior was serious enough to warrant documentation, and directed her to write the report. (*Id.* at ¶ 7.)

30. On January 12, 2003, Defendant Chamalbide documented what she had observed between inmates Martinez and Radillo on a form 128-C, custodial counseling chrono. (*Id.* at ¶ 8.)

31. Defendant Chamalbide has never discussed the contents of the counseling chrono with any inmate, and has not discussed the incident with any other staff members. (*Id.* at ¶ 9.)

### PLAINTIFF'S STATEMENT OF DISPUTED FACTS

Plaintiff challenges Defendants' undisputed fact number 31. Defendants noted that Chamalbide, in her declaration, states that she did not talk to any other inmate about the chrono she issued to Plaintiff. Plaintiff's Exhibit A is the declaration of inmate Andrew Rodriguez.

Rodriguez declares that he is an affiliate of the Mexican Mafia. Rodriguez also declares that on January 5, 2003, Chamalbide told him that she recently caught two inmates "at sex play." Rodriquez informed Chamalbide that it was a "bad thing." On January 12, 2003, Chamalbide identified the inmate as Plaintiff. (Declaration of Andrew Rodriguez,¶¶ 2-5). Chamalbide also advised Rodriguez that "the IGI was pressuring her to accuse and write a CDC 128 on inmates Martinez and Radillo for the sexual behavior she told me about since she told me it was her last day to work on our cell block." Id.

Plaintiff stipulates to Defendants' statement of undisputed fact number 14, that the Mexican Mafia does not tolerate homosexual behavior. Plaintiff disputes fact number 17, Lunes' declaration that if either inmate Radillo or Martinez felt in danger, they could contact him. Plaintiff does not offer any evidence to support his contention. The opposition is made under the penalty of perjury, and is therefore not treated as a declaration in opposition.

Plaintiff offers the declaration of his cellmate, inmate Martinez. Martinez declares that Defendant Lunes advised Martinez that there was a chrono "going around showing him and Plaintiff 'in an act.'" Lunes told Martinez that "we don't care. It's your homies you have to worry about." (Declaration of Martinez, ¶ 5).

Plaintiff also disputes that Lunes expressed concern for Plaintiff's safety. Plaintiff again refers to paragraph 5 of Martinez's declaration to support this contention. Plaintiff refers the Court to Plaintiff's first set of interrogatories to Defendant Lunes to support his contention that Lunes was deliberately indifferent to Plaintiff's safety. Plaintiff asked Lunes why he did not place Plaintiff on single cell status. Lunes responded that he did not have that authority. Plaintiff offers no evidence that Lunes had such authority.

Plaintiff also disputes that he was engaged in homosexual behavior. In his declaration at paragraph 3, Martinez declares that "at no time did I and inmate Radillo engage in sexual behavior as described by C/O Chamalbide in her CDC 128-A counseling chrono dated January

1  12, 2003 which was fabricated as retaliatory action."   In paragraphs 9-10, Martinez declares that
2  he never made "sexual admissions" to Defendant Lunes.   Plaintiff offers his own declaration,
3  and in paragraphs 2 and 3 denies that he ever had in his possession the note referred to in
4  Defendants' undisputed fact number 18.   Plaintiff contends that he was never given written
5  notice that the note was removed from his cell, "which only confirms that 'unit staff' did not
6  confiscate this supposed letter from my quarters."  (Decl. of Plaintiff, ¶ 4).

## EIGHTH AMENDMENT CLAIM

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  Hoptowit, 682 F.2d at 1250 (9th Cir. 1982); Farmer v. Brennan, 511 U.S. 825, 833 (1994).  To establish a violation of this duty, the inmate must establish that prison officials were deliberately indifferent to a substantial risk of serious harm to the inmates's safety.  Farmer, 511 U.S. at 834.  The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ."  Farmer at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know of and disregard an excessive risk to inmate health or safety."  Id. at 837.

The Defendants must both be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and they must draw the inference.  Farmer, 511 U.S. at 837, Gibson v. County of Washoe, 290 F.3d 1175, 1187-88 (9th Cir. 2002); Jeffers v. Gomez, 267 F.3d 895, 913 (9th Cir. 2001); Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995).

As to Defendant Lunes, Plaintiff's central claim is that by telling his cellmate that a chrono is "going around," and that Plaintiff and his cellmate has to worry about their "homies," he placed Plaintiff in danger.  Plaintiff's evidence (the declaration of his cellmate, Martinez), creates a triable issue of fact as to whether they were engage in homosexual conduct.  The issue in this case, however, is not whether Plaintiff and his cellmate were engaged in homosexual conduct.  The issue is whether Defendant Lunes knew of an excessive risk to Plaintiff's safety, and acted with deliberate indifference to that risk.  That Lunes informed Plaintiff that a chrono was going around does not subject him to liability.   The evidence submitted by Plaintiff indicates that the allegation of homosexual behavior is false.  The evidence submitted by Lunes indicates that it is true.  There is no evidence that Lunes intentionally disseminated this information, true or false, to a known member of the Mexican Mafia.  That Lunes informed Martinez that there was a chrono going around, and that he would have to worry about gang members instead of correctional officials, does not subject him to liability.  That evidence indicates that Lunes was advising Plaintiff of information that he knew, information of a general nature.  That Plaintiff believes Lunes had malicious intent is immaterial.  Plaintiff has not come forward with evidence that Lunes intentionally told any member of the Mexican Mafia that Plaintiff was engaged in homosexual behavior.  Lunes is therefore entitled to judgment on Plaintiff's Eighth Amendment claim.

Regarding Plaintiff's claim that Lunes failed to protect him, Lunes is entitled to judgment.  The evidence submitted by Lunes indicates that he did not have the authority to order a cell reassignment.  Plaintiff offers no evidence for his conclusion that Lunes' failure to order a cell reassignment or to otherwise protect him was motivated by deliberate indifference.

As to Defendant Chamalbide,  Defendants argue that prior to the filing of this motion for summary judgment, Plaintiff had never claimed that Defendant Chamalbide disclosed his identity to other inmates.    Plaintiff does, however, assert a claim of deliberate indifference to his safety.

Though Plaintiff fails to make the specific claim in his complaint that Chamalbide informed other members of the Mexican Mafia, he does allege that he was subjected to harm because of disclosure of his homosexual conduct.   Defendants note, however, that the evidence submitted by Plaintiff to support this claim, the declaration of inmate Rodriguez, indicates that Rodriguez believed the information to be false.  There is no evidence that a member of the Mexican Mafia knew and believed that Plaintiff was engaging in homosexual behavior and that Chamalbide informed them.   Defendants also note that inmate Rodriguez is a member of the Mexican Mafia (declaration of M. Lunes, ¶ 12).  Defendants argue that Plaintiff's continued association with members of the Mexican Mafia, including obtaining a supportive declaration from them, indicates that Plaintiff does not believe he is in danger.

This case does not turn on inmate Rodriguez's subjective impression of Chamalbide's statement.  At the moment that Defendant Chamalbide informed Rodriguez of Plaintiff's homosexual behavior, he became liable.  In order to meet his burden on summary judgment, Plaintiff must come forward with evidence that Chamalbide intentionally informed a member of the Mexican Mafia that Plaintiff was engaged in homosexual behavior.  Here, a reasonable inference can be drawn from Rodriguez's declaration that Chamalbide knew that Plaintiff engaged in homosexual conduct, that Chamalbide knew that conduct was disfavored by the Mexican Mafia, and that Chamalbide informed a member of the Mexican Mafia of that fact.  Chamalbide's liability does not turn on whether Rodriguez believed the information or not.

Though it is undisputed that Plaintiff associates with Mexican Mafia members, a reasonable inference can be drawn that engaging in homosexual behavior by a Mexican Mafia member places that member at risk.  There is a disputed fact as to whether Plaintiff was engaged in homosexual conduct, and whether Defendant Chamlabide informed other members of this behavior.  Plaintiff's claim rests on two triable issues of fact - whether he engaged in homosexual behavior and whether Chamalbide informed other Mexican Mafia members that Plaintiff was

1  involved in homosexual behavior.  As noted above, however, the evidence indicates that
2  Chamalbide believed that Plaintiff was engaging in homosexual behavior and that Chamalbide
3  informed a member of the Mexican Mafia that Plaintiff was engaging in homosexual behavior.
4  Defendant Chamalbide is therefore not entitled to judgment on this claim.

FIRST AMENDMENT

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity.  Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000).

Plaintiff alleges that Defendant Lunes pressured Defendant Chamalbide to issue a false report that Plaintiff and inmate Martinez were observed in a sexual act in retaliation because Plaintiff submitted a "Request for Interview" form, complaining about interference with his mail. Defendants argue that Plaintiff offers no admissible evidence that he ever submitted this form. Defendants submit the declaration of Defendant Lunes.  In paragraph 6, he declares that he was aware that both inmate Martinez and Radillo had filed administrative appeals complaining about the monitoring of their mail.  Lunes further declares that inmate Martinez was responsible for controlling the activities of the Southern Hispanic inmates at California Substance Abuse Treatment Facility, that Plaintiff's wife was acting as a mail drop for Martinez and the Mexican

Mafia, and therefore the correspondence of Plaintiff and Martinez was monitored. (Lunes Decl. ¶¶ 6-8). All monitoring activities were conducted according to regulations and institutional procedures. As a result, it was Lunes' belief that the appeals had no merit. Id,. ¶ 9.

In opposition, Plaintiff offers the declaration of inmate Martinez. Lunes declares that Plaintiff asked Lunes about the form, and Lunes responded that the submission of the form "hurt his feelings." Defendant argues that Plaintiff's claim fails, because he has not produced any evidence that he engaged in protected activity, the first element of a retaliation claim. Defendants refer the Court to Plaintiff's Exhibit C, Defendant Lunes' Response to Plaintiff's First Set of Interrogatories, at Response to Interrogatory No. 15. That response indicates that Lunes has no recollection of a conversation with Plaintiff about mail tampering.

That Martinez was engaged in protected activity does not subject any of the Defendants to liability for retaliation against Plaintiff. Plaintiff offers no evidence that he was engaged in protected activity, or that Defendants' conduct failed to advance a legitimate penological goal, or that his First Amendment rights were actually chilled. Defendants correctly argue that Plaintiff can not transfer an alleged intent to retaliate against inmate Martinez into an intent to retaliate against him. Defendant Lunes is therefore entitled to summary judgment on Plaintiff's retaliation claim.

Accordingly, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment be granted in favor of Defendant Lunes and against Plaintiff on Plaintiff's Eight Amendment and First Amendment claims, and denied as to Defendant Chamalbide on Plaintiff's Eighth Amendment claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time waives all objections to the judge's findings of fact. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   March 7, 2008**              /s/  **William M. Wunderlich**
                                        UNITED STATES MAGISTRATE JUDGE